Putnam, J.
Lakewood first contends that Section 5521.01, Revised Code, does not authorize the director to journalize the appealed resolution of November 1, 1957, because the proposed relocation is not now on the f. a. p. highway system.
There is no doubt that, under the evidence, that portion of the f. a. p. highway system in the area involved here is now coincident with U. S. Routes Nos. 6 and 20 coming from the east through Cleveland, Lakewood and Rocky River and extending beyond through western Ohio, and has been for many years. It is also apparent from the evidence that, under the Federal Aid Highway Act (Section 101 et seq., Title 23, U. S. Code), a state may apply for federal aid at any period in the development of a project, viz., (a) preliminary surveys of proposed construction or reconstruction, (b) acquisition of rights of way and (c) aid in actual construction. The state, however, if it wishes federal aid, must before starting work submit to the Secretary of Commerce detailed construction plans and have his approval. Also a state may, as far as the federal act is concerned, construct a proposed improvement without federal funds. It is also apparent from the evidence that until now the director has not asked for any federal funds or submitted to the Secretary of Commerce actual construction plans. In fact no detailed construction plans have been made. It is also apparent from the record that when and if actual construction plans are made for this project they will be submitted to the Secretary of Commerce, and aid will be asked in pursuance to federal laws.
*140 The gist of the argument of Lakewood is that, under the proviso of Section 5521.01, Revised Code, the director has no power to journalize the appealed resolution until the director has made and submitted to and obtained the approval of final construction plans from the Secretary of Commerce and he has redesignated the reconstructed and relocated route as a portion of the f. a. p. highway system. In this connection, Lakewood also contends that, since the proviso is an exception to the rights of a municipality under the Constitution and other laws applicable, it should be.narrowly construed and the term, “relocation,” should be likewise construed; and that what is actually proposed is the construction of a new highway.
The improvement of highways is a complicated process. Old highways are not usually entirely rebuilt at one time. They are attacked at their weakest points. The elimination of a bad curve at one place, the relief of a bottleneck at another place or a bypass or the elimination of a railroad crossing or an intersecting highway underpass or overpass is common. Anyone driving on the highways of this state can see this process constantly going on. Can it be seriously argued that such changes in an existing highway, whether it be U. S. Highway 20, 40 or 62, destroy that highway as such? We do not think so. These relocations are constantly taking place. It is not necessary here to define how much of a change amounts to a relocation. But certainly when a new project takes off from the old route, traverses a néw route for several miles and later comes back into the old route, it is either a “reconstruction” or “relocation” of the old route, as those terms are used in Section 5521.01, Revised Code, and not the construction of a new highway.
With these observations in mind, a reading of this proviso clearly indicates that the same was intended to apply to existing f. a. p. highways and to include a relocation thereof and, if necessary in the opinion of the director, to establish such a highway as a limited-access highway. Both the federal law and the state law must be read together and harmonized in order to accomplish the end in view. If we were to hold with Lakewood that the director could not journalize his final entry under this section until he had applied to and secured the approval of the Secretary of Commerce of final construction plans and the designa *141 tion of the new project as a new f. a. p. highway, it would deny the state of many benefits under the co-operation of both parties as contemplated. It was not so intended.
Prior to the invocation of Section 5521.01, Revised Code, the director, believing himself bound by Section 5511.01, Revised Code, advertised for a hearing on the proposed project. The holding of the hearing was contested by Lakewood in an injunction suit in the Common Pleas Court of Franklin County, which finally reached this court (motion to certify record overruled, January 15, 1958), and the relief sought was denied. The claim of Lakewood now is that by this action the director admitted that he was establishing a new highway. However, Section 5511.01, Revised Code, provides for such notice and hearing before, among other things, “making any changes in existing highways comprising the system.” .This section must be read in pari materia with Section 5521.01, Revised Code, and we hold that proceedings under the former section are a necessary prerequisite to instituting procedure under the latter section. It is more in the nature of a designation statute and leaves the director with full power to proceed or not as future developments may dictate. His acts could always be rescinded by like procedure.
Lakewood contends next that it was denied fair administrative consideration in that a former Director of Highways had on October 27, 1955, entered into an agreement with Cuyahoga County relative to the construction of a facility to relieve congestion at points under consideration, which in fact relates to the proposed project, and by which the state was bound and which precluded the present director from giving fair consideration to Lakewood’s objections thereto and from coming to an independent conclusion thereafter on the issues involved. The director argues that he was not bound by the contract but, if he was and is, he was only bound thereby to institute proceedings under Section 5521.01, Revised Code, if Lakewood would not consent, and to make certain reimbursements to Cuyahoga County on further engineering studies to be provided by Cuyahoga County as set forth therein.
In evaluating these contentions, a short sketch of'the history of this project is in order. As early as 1928 the need of relieving *142 the bottlenecked traffic across the present Detroit-Rocky River Bridge and its approaches from both east and west was recognized and made the subject of a planning report. Thereafter bond issues were passed by Cuyahoga County which included this project, but due to World WTar II and other reasons nothing was done. In 1952, Cuyahoga County revived the project and contacted the state Department of Highways, looking toward the reopening of the project. As a result thereof, on March 24, 1952, Cuyahoga County and the Director of Highways entered into an agreement whereby Cuyahoga County agreed to hire an independent engineering firm to make a preliminary engineering report on a project or projects to- relieve the traffic congestion on this bridge and the approaches thereto. This was done and thereafter in April 1953 the engineers submitted what is known in the record as the K. T. A. M. report. This report considered several plans but recommended substantially the present project as preferred. Thereafter, Lakewood, being apprised of the report, passed a resolution objecting thereto. It also employed special counsel to defend its position and also employed a separate engineering firm to study the problem and make recommendations. This was done, and that report is a part of the record. In December 1954, Cuyahoga County requested the director to proceed with plans to solve the problem at this bridge. Then, in October 1955, the agreement in question was consummated. Pursuant thereto, another firm was employed by Cuyahoga County to restudy the situation and make a design report considering among other things the K. T. A. M. report. This was done and is known in the record as the Howard-Needles report. This study was made, and in August 1956 a report thereon was made, and it is in substantial accord with the K. T. A. M. report, and both reports recommended the present project. In August 1956, the director advertised for a hearing under Section 5511.01, Revised Codé, and this hearing was postponed due to the injunction case above mentioned. After that case was terminated, a new hearing was had under said section in April of 1957. Thereafter, on July 11, 1957, with all these proceedings in the record and presumably in mind, the director journalized an entry which relocated said routes and established them as a limited-access highway as described in the notice of *143 hearing in April 1957. Thereafter, proceedings were had as hereinbefore stated, and the entry of November 1, 1957, from which the appeal was taken, was journalized.
In considering the proposition, we must also consider the proposition advanced by Lakewood that the Legislature, in delegating powers to the Director of Hivhwavs. has provided the director with no standards to guide him with respect to recommending a state highway to the Secretary of Commerce for approval as an f. a. p. highway. Lakewood contends also that there are no standards to guide the director as to urgent need or to what segments of highways are in need of repair, relocation, etc., as provided in Section 5521.01, Revised Code.
The standard stated in the latter section is: “When a federal aid * * * highway * *•* in the opinion of the director, is in urgent need of repair, reconstruction * * * or relocation.” This is practically the same standard as provided in Section 5501.11, Revised Code, and other statutes relating to his discretionary powers. If this standard should be declared insufficient the whole Highway Code would be of doubtful constitutionality. When we are considering the broad and detailed duties of a state director of highways under modern conditions and legislation, it is not only impractical but impossible to write into legislation specific standards of conduct which would embrace all possible contingencies which would confront a director in his manifold duties. Where such a situation exists and where such decisions must be made, a delegation of powers in general terms, depending upon the judgment of the one to whom the powers are delegated, is justified.
With this conclusion in mind and the history of this case before us, can we say as a matter of fact that the director in his entry of November l, 1957, did not consider all the previous history of the case and made an independent conclusion thereon? The contract of October 1955 contains 11 whereas clauses, two of which are cited by Lakewood in its brief upholding its contention, and two of which are cited by the director. The agreement is too lengthy to be copied herein, but after a study of the same it is our opinion that this agreement did not prevent the director from giving full consideration to all the factors involved in his final determination as evidenced by the resolu *144 tion of November 1, 1937, to proceed with the improvement in accordance with the plans set forth in the notice of hearing in April 1957. At most, all that was actually required of the director by the 1955 agreement was that he proceed to invoke the provisions of Section 5521.01, Revised Code, if Lakewood would not consent to the plans which the director finally adopted and to reimburse Cuyahoga County for preliminary engineering expenses. There could be many contingencies happen after this agreement was entered into which could change or modify the final plan. The Howard-Needles report provided for therein could have done so if it had taken sharp dissent to the K. T. A. M. report. Also at that time it had not been determined at what stage of the proceedings to invoke federal aid. The views of federal authorities would be another consideration. In view of the lack of an absolute interdiction in the agreement, we must presume that the director gave consideration to all factors involved and exercised his best judgment in the formulation of his resolution.
Lakewood contends further that the proviso in Section 5521.01, Revised Code, which does not provide for a hearing on the director’s resolution and which contemplates a decision on undisclosed evidence and requires no findings of fact, denies Lakewood due process of law. With this we cannot agree. In the appeal provided for by this section, all questions of law and fact can be, and have been, raised as this court has heretofore determined in the case of State, ex rel. City of Lakewood. v. Linzell, 166 Ohio St., 98, 139 N. E. (2d), 45. Unless a statute specifically provides for an administrative appeal at certain stages of a case, this general appeal which contemplates a trial de novo on the facts and procedure involved does grant to Lakewood due process of law. The trial court placed the burden of proof on the director, considered this case as a trial de novo which it is and admitted all competent evidence concerning the history of the case. The entry of November 1, 1957, contains sufficient findings of fact as contemplated by the statute. Lakewood has not suggested what findings were necessary or withheld.
It is contended next by Lakewood that the evidence is legally insufficient to support the finding that the proposed highway is *145 urgently needed to accommodate the traveling public. That there is and has been for many years an urgent need of some plan to relieve traffic congestion in the area under consideration is denied by no witness. However, Lakewood contends that there must be urgent need for this particular project. That is true. Nevertheless, as the record shows, many studies and plans have been made and considered involving cost, destruction of property and facilities to the traveling public consisting of both local and through traffic and as projected for the next 20 years, taking into consideration other freeways and facilities in contemplation or to be desired. A reading of this record shows not only that there is substantial evidence to support the director’s findings but that they are supported by the greater weight of the evidence, if we were inclined to weigh it.
The constitutionalitv of this proviso is further nupstioned by Lakewood in that the same delegates power to legislate contrary to Sections 1 and 2fi, Article II of the Ohio Constitution. The first section vests power to legislate solely in the Legislature and Section 26 prohibits the enactment of any law to take effect upon the act of any person or body other than the Legislature, except schools. The argument is that under this proviso and the Federal Highway Act legislative power is abdicated in favor of the United States in (hat the Secretary of Commerce and his subordinates have sole power to designate f. a. p. highways. This argument overlooks the fact that under state laws it is the duty of the director initially to propose to the secretary what highways are to be in the federal aid highway system. The secretary has no power to designate originally what highways are to be in the system. He has onlv the power of approval or veto. This does not constitute a delegation of legislative authority. It still remains with the director to say in the end what highways, if any, can belong to the federal system. The director’s discretion in this matter is no more or less than is granted to him in many other sections.of the Code in the maintenance and control of the highways of this state. The fact that a state highway is also an f. a. p. highway does not relieve the director of his primary obligation with reference thereto as a state highway, although if he wants federal funds in its main *146 tenance, repair, relocation or reconstruction he is subject to a federal determination of the nature thereof. The director contends that, since the state still has control and jurisdiction over its highways, the improvement can be financed by state funds alone. This proposition is not now before us and we express no opinion thereon. The final stage of this program has not been reached. It remains to have detailed construction plans made and submitted to the federal authorities and their action thereon recorded. As we have hereinbefore indicated, the federal authority can participate in any of the several stages of this work. The proviso under consideration does not interdict this procedure. We must recognize the realities of construction methods and engineering procedures. Legislation cannot be hamstrung by technicalities as to whether the cart precedes the horse. We mean by this observation that, under our state highway laws and the federal acts, all must be construed together in order, from an engineering standpoint, to effect the purposes which the respective legislative authorities intended. If no improvement could be inaugurated until the final construction plans were approved by federal authorities the whole program would be impractical. There is no such delegation of powers here as to invalidate this section.
Lakewood contends further that this proviso is unconstitutional as being in conflict with Section 3, Article XVIII of the Constitution of Ohio. This section provides:
“Municipalities shall have authority to exorcise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
This court had that section under scrutiny in the case of State, ex rel. Ohio Turnpike Commission v. Allen, Secy -Treas. 158 Ohio St., 168, 107 N. E. (2d), 345. In that case it was alleged that the building of the Ohio turnpike through a municipality without its consent was a violation of this section and article. It was therein held that the building of a turnpike was not a matter of local self-government. Here we are dealing with an f. a. p. highway. Both are through routes of state-wide and national importance. While the ratio of through traffic and local traffic may be different and variable, an f. a. p. highway is *147 more than of local interest and of local regulation. The relocation of such a facility through a municipality without that municipality’s consent consequently does not violate this constitutional provision.
Lakewood contends further that the proviso is in violation of Section 26, Article II of the Constitution of Ohio, which provides that all laws of a general nature shall have uniform operation throughout the state. The basis of this contention is that the proviso does not apply to all streets and highways' within a municipality, and consequently, since the classification has no justifiable basis, the proviso must fall. That the subject of roads and highways-is one of general nature cannot be questioned. That the proviso applies to all municipalities and counties in the state is apparent. The question remains: Is the classification, “federal aid primary highway or federal aid interstate highway,” reasonable so as to justify taking away from municipalities the power under local self-government to decide where such highways within their boundaries will be located and the nature of the improvement? We think that it is. The lessons of World War II, the changing international picture since then, and the unexpected population increase in this state and nation, together with the attendant increase in motor-vehicle registration, have presented transportation problems undreamed of 25 years ago. The national concern is evidenced by the multibillion-doilar aid program authorized by the Federal Aid Highway Act. Most certainly, national defense was a prime consideration in this program. The situation is in continuous flux. With all the foresight of the past ten years, new problems continually arise with advanced technology. We can take judicial notice that even now many bridges and underpasses thought sufficient a few years ago must now be replaced to accommodate new missile and other defense weapon transportation. Naturally the route and design of a relocated facility on an f. a. p. highway or the designation of an f. a. p. highway is of concern and subject to the approval of both the Director of Highways and the federal authority. Local self-interest must give way to the general welfare.
The fear of Lakewood, that if the judgment below is affirmed *148 there will be opened the way to an entire destruction of local self-control by a municipality of its streets and highways and the director will be enabled to do what he wishes therewith irrespective of the wishes of the municipality, is without foundation. Such results would require a new act with a new classification which would then be subject to review. To hold with Lakewood on some of the grounds advanced would endanger the entire State Highway Act and seriously impede the present vital program of highway construction so much needed.
We hold that the proviso here is a constitutional enactment; that the procedure therein prescribed has been followed; and that on the facts the director was justified in making the determination which he made. The judgment is affirmed.

Judgment affirmed.

Zimmerman, acting C. J., Taet, Matthias, Bell, Herbert and Peck, JJ., concur.
Zimmerman, J., sitting in the place and stead of Weygandt, C. J.
Putnam, J., of the Fifth Appellate District, sitting by designation in the place and stead of Zimmerman, J.